

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand sixteen.

PRESENT: JON O. NEWMAN,
RALPH K. WINTER,
REENA RAGGI,
*Circuit Judges*.

------------------------------------------------------------------------
UNITED STATES OF AMERICA,
*Intervenor-Plaintiff-Appellee*,

UNITED STATES OF AMERICA EX REL. JOHN DOE
and THE STATE OF NEW YORK EX REL. JOHN DOE,
*Plaintiffs*,

v.   No. 15-2307-cv

ALEX SAAVEDRA,
*Intervenor-Defendant-Appellant*,

SHOMARI GREENE, ALAN KATZ, TAGEWATEE CHANDARPAUL, MITCHELL MCCLINTON,
*Intervenor-Defendants*,

STRUCTURED EMPLOYMENT ECONOMIC DEVELOPMENT CORPORATION,
*Defendant*.*

---
* The Clerk of Court is directed to amend the caption as set forth above.

1

MANDATE ISSUED ON 11/08/2016

------------------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANT: | BETTINA SCHEIN, ESQ. (Alan Samuel Futerfas, Matthew C. McCann, Law Offices of Alan S. Futerfas, New York, New York, *on the brief*), New York, New York. |
| APPEARING FOR APPELLEE: | JENNIFER ELLEN BLAIN, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on June 18, 2015, is AFFIRMED.

Following a jury trial, defendant Alex Saavedra, former director of two career centers run by non-profit Structured Economic Employment Development Corporation ("SEEDCO"), was found liable for violating the False Claims Act ("FCA"), see 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), by causing false claims to be made to the New York City Division of Small Business Services ("SBS"), resulting in the payment of federal funds. On appeal, he challenges (1) the sufficiency of the evidence; (2) the district court's (a) jury instructions and (b) denial of readback requests; and (3) the award of $39,000 in damages, see id. § 3729(a)(1), and $143,000 in civil penalties, see id. § 3729(a); 28 C.F.R. § 85.3(a)(9). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. Evidentiary Sufficiency

Saavedra argues that, in the absence of direct proof that quarterly payment-authorization memoranda submitted by SBS's third-party auditor contained false job-placement data, the government failed to adduce sufficient evidence that he caused SEEDCO to present any false "claim" or material record. Because Saavedra did not renew his previously denied motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), however, he forfeited any challenge to the evidentiary basis for the jury's verdict on appeal. See Ortiz v. Jordan, 562 U.S. 180, 189 (2011) ("Absent such a motion, we have repeatedly held, an appellate court is 'powerless' to review the sufficiency of the evidence after trial." (quoting Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 405 (2006))); Jacques v. DiMarzio, Inc., 386 F.3d 192, 199–200 (2d Cir. 2004).[1] Accordingly, we may reach his sufficiency challenge only "to prevent a manifest injustice," which is present "in cases where a jury's verdict is wholly without legal support." Jacques v. DiMarzio, Inc., 386 F.3d at 199 (brackets and internal quotation marks omitted). This is not such a case.

Assuming, arguendo, that SBS's quarterly internal calculation—and not SEEDCO's entry of false data into the WorkSource1 system—constituted the relevant

---

[1] No different conclusion is warranted by Saavedra's single-sentence statement in the parties' joint May 20, 2015 letter submitted "to present their respective positions regarding assessing the mandatory civil penalty pursuant to 31 U.S.C. § 3729(a)(1)." D.A. 1015; see id. at 1021 ("We respectfully submit that the government has not proven that one false claim was submitted for payment to the United States."). The Federal Rules clearly provide that "[a] request for a court order must be made by motion," which must, inter alia, "state the relief sought." Fed. R. Civ. P. 7(b)(1)(C) (emphasis added); see also Fed. R. Civ. P. 50(b) (authorizing movant to file "renewed [postverdict] motion for judgment as a matter of law" (emphasis added)).

3

"claim," as Saavedra contends, the contracts introduced into evidence plainly established that SBS would calculate SEEDCO's performance payment on the basis of not only statistical sampling by the auditor, Charney Research, but also the total number of placements SEEDCO claimed. Thus, the more job placements SEEDCO claimed, the more federal funds it was potentially entitled to receive, regardless of Charney's sampling results.[2] Moreover, the jury reasonably could have interpreted—through a former SBS Deputy Commissioner's testimony—an internal SBS email as indicating that 401 false placements had been included in a roster sent to and validated by Charney. See D.A. 264–65; see also id. at 859–61 (reflecting October 2012 email request for SBS staff to "amend the performance calc[ulations]" based on "Seedco false placements" for January to March 2011 period). The former Deputy Commissioner, Angie Kamath, also discussed a New York City Department of Investigation ("DOI") report concluding that SEEDCO's falsification "was done in a way that would have passed the Charney validation methods." Id. at 289. In fact, Kamath testified that SBS itself had

---

[2] Saavedra cannot urge otherwise by speculating that, even if some false placements were claimed, "by operation of the Charney Research validation process," the percent validated "would be decreased." Appellant's Reply Br. 8. Unless Charney validated 100% of SEEDCO's claimed placements—or fewer than 50%, in which case SEEDCO would receive no performance payment—the contract's terms meant that SEEDCO always would be paid for more placements than were verified. See D.A. 835 (indicating that SEEDCO would receive 100% payment where Charney validated 75–100% of placements, and 75% payment where Charney validated 50–74%). In any event, Charney did not actually verify every placement claimed on SEEDCO's roster; rather, it relied on a randomly selected representative sample to obtain statistically significant results. See, e.g., id. at 516 (discussing 5% error-margin target). Thus, the record establishes that SBS paid SEEDCO for placements that were not individually validated.

discovered at least one false placement that had "passed through" the validation process, and that SBS had paid SEEDCO for that false placement. Id. at 292.

Further, the jury heard testimony from (1) the SEEDCO employee responsible for entering intake data, who stated that she falsified job placement information "50 percent of the time," P.A. 74; (2) Saavedra's direct report, who stated that, during the majority of his tenure, SEEDCO never met placement targets without using false placement data, see id. at 2, 62–63; and (3) Saavedra's administrative assistant, who stated that Saavedra personally directed her to enter false placement data into WorkSource1, see D.A. 164–66. On sufficiency review, we must assume that the jury credited these witnesses. See Cash v. Cty. of Erie, 654 F.3d 324, 338 (2d Cir. 2011).

The totality of this evidence precludes a conclusion that the jury's preponderance finding was "wholly without legal support." Jacques v. DiMarzio, Inc., 386 F.3d at 199 (internal quotation marks omitted). Indeed, the record evidence is sufficiently compelling that, even if Saavedra had not forfeited his sufficiency claim, it would fail upon de novo review in any event. Cf. Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664 (2d Cir. 2012) (stating that reviewing court will reverse denial of Rule 50 motion if, drawing all inferences in favor of—and reviewing all evidence in light most favorable to—plaintiff, no reasonable juror could have returned verdict for plaintiff).

2. Jury Instructions

   a. Definition of "Claim"

Saavedra faults the district court for issuing the generic instruction on the meaning of "claim" for FCA purposes even though it had previously concluded that: (1) whether

5

the claim was SEEDCO's entry of false data (as the government urged) or SBS's quarterly internal calculation (as Saavedra maintained) was "an issue of law" for the court to decide, D.A. 585; and (2) the relevant claim here was the quarterly calculation, not the entry of false data, see, e.g., id. at 605 ("There is a difference between a record and a claim. The claim is the request. If the custom under the contract is to ask for payment quarterly, then that is the request and that's the claim."). Saavedra contends that, by refusing to instruct the jury that only the quarterly calculation was an FCA claim, as the defense requested, see id. at 583–84, the court erroneously permitted the jury to find him liable under the government's data-entry theory, which the court itself had rejected as a matter of law.

We need not decide whether, upon de novo review, the challenged instruction—which, as Saavedra concedes, accurately tracked the language of the statute—"misled the jury about the correct legal standard" or otherwise "inadequately informed [the jury] of the controlling law." Crigger v. Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006) (internal quotation marks omitted); see United States v. Alfisi, 308 F.3d 144, 150 (2d Cir. 2002) ("Where a district court's jury instructions accurately track the language and meaning of the relevant statute, we generally will not find error.").[3]

---

[3] The court instructed:

> A claim is "any request or demand for money or property made to a contractor, grantee or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States government provided any portion of the money or property requested or demanded or will reimburse the

A new trial would be required only if, "considering the instruction as a whole, the cited errors were not harmless, but in fact prejudiced the objecting party." Crigger v. Fahnestock & Co., 443 F.3d at 235 (internal quotation marks omitted). Assuming, arguendo, that Saavedra can demonstrate charging error, he cannot show the requisite prejudice in light of the above-described evidence, which showed that, regardless of Charney's validation results, each falsely claimed placement increased SEEDCO's potential performance payment under the contract's methodology, thereby causing the presentation of false claims. Indeed, the government argued in summation that, for this reason alone, "whether you view the claim as coming through WorkSource1 or whether you view it as some sort of compilation of those placements [in the authorization memoranda], it amounts to the same thing." D.A. 665. Accordingly, even if the jury had been instructed that only the quarterly SBS calculation—and not the individual data entries—could constitute an FCA claim, there is no basis to conclude here that it would have rendered a different verdict. See Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 56 (2d Cir. 2012) (stating that error is harmless "when we are persuaded it did not influence the jury's verdict" (internal quotation marks omitted)).

---

contractor, grantee, or other recipient for any portion of the
money or property requested or demanded."
P.A. 107 (quoting 31 U.S.C. § 3729(b)(2)).

7

Thus, if there was any error in the district court's FCA claim instruction, that error was harmless.[4]

b. <u>Relevance of Charney Research</u>

Saavedra argues that the district court's unsolicited instruction regarding Charney Research impermissibly usurped the jury's role as factfinder because it suggested that such evidence had "no factual import." Appellant's Reply 20.[5] We are not persuaded.

Insofar as "correct application" of the FCA "requires that the focus in each case be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures," <u>United States v. Bornstein</u>, 423 U.S. 303, 312 (1976), the challenged instruction was consistent with Supreme Court precedent. See <u>id.</u> at 312–13 ("The statute . . . does not penalize [a subcontractor] for what [the contractor who ultimately submitted the claim] did. It penalizes [the subcontractor] for what <u>it</u> did." (emphasis added)). The district court, therefore, did not mislead the jury as to the correct legal standard or otherwise inadequately inform it of controlling law by stating

---

[4] We, therefore, need not decide whether—as the government insists—Saavedra failed to preserve this challenge by agreeing to the instruction.

[5] The challenged instruction stated:

> There was testimony in the case that [SBS] contracted with Charney Research to verify the job placement data submitted by SEEDCO. The fact that a third-party verification service was utilized does not by the mere fact of its use change the issues that you have to decide regarding Mr. Saavedra's liability. The question is if he knowingly presented or caused to be presented one or more false claims for payment to [SBS] with funds that ultimately came from the United States.

P.A. 108–09.

that use of a third-party validation service did not "by the mere fact of its use change the issues" the jury had to decide regarding Saavedra's liability. P.A. 109 (emphasis added); see Crigger v. Fahnestock & Co., 443 F.3d at 235. Nor did the district court suggest, as Saavedra contends, that testimony regarding Charney had "no bearing on the issues in the case." Appellant's Reply Br. 20 (emphasis added). Rather, the instruction clearly explained that Charney's role did not necessarily affect Saavedra's FCA liability. This properly left the jury to decide whether Charney's involvement, in fact, had such an effect. See, e.g., Britt v. Garcia, 457 F.3d 264, 272 (2d Cir. 2006) (noting "fundamental proposition" that jury is presumed to follow instructions (internal quotation marks omitted)).

Accordingly, we reject Saavedra's challenge to this instruction as meritless.

3. Readback Request

Saavedra contends that he is entitled to a new trial because the district court improperly refused to read back to the jury the entire deposition testimony of William Harper, the qui tam relator and SEEDCO employee who uncovered the fraudulent scheme.[6] Although we have stated "a clear preference for readbacks whenever they are requested by a deliberating jury," United States v. Escotto, 121 F.3d 81, 84 (2d Cir. 1997), "[a] trial court's refusal to allow read-backs of testimony in response to jury requests during deliberations is within its broad discretion," United States v. Salameh,

---

[6] While Saavedra also challenges the court's refusal to provide the jury with DOI investigator Chanterelle Sung's entire testimony, we decline to consider the argument, which he asserts only in a footnote in his opening brief. See Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 867 n.7 (2d Cir. 2015).

9

152 F.3d 88, 133 (2d Cir. 1998). We identify no abuse of that discretion here because the district court did not categorically refuse to read back Harper's testimony. Cf. United States v. Criollo, 962 F.2d 241, 244 (2d Cir. 1992) (reversing conviction based on blanket readback prohibition). Rather, the court explained—in response to a request to rehear all testimony by Harper and DOI report drafter Chanterelle Sung, as well as Saavedra's entire cross-examination—that "[t]he purpose of the trial is to give you all this evidence. If there is something specific that you can't recall or that you're debating about, let me know what that specific item is and we'll send that back to you. We are not sending back globs of testimony, okay?" D.A. 680.

We cannot conclude that this response fell "outside the range of permissible decisions" available to the district court. Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015); see United States v. Escotto, 121 F.3d at 84 (instructing courts to consider "jurors' need to review the evidence before reaching a verdict . . . against the difficulty in locating the specific testimony requested, the possibility of undue emphasis on any portion of the testimony, and the possibility of undue delay"). While Saavedra insists that Harper's testimony was "central," Appellant's Reply Br. 24, the argument is undermined not only by the jury's failure to request further information before rendering its verdict later that day, but also by the district court's repeated observations that portions of Harper's testimony read into the record by the defense were redundant. Cf. United States v. Parker, 903 F.2d 91, 101 (2d Cir. 1990) (observing trial judge is best positioned "to sense whether the jury is able to proceed properly with its deliberations,"

and has "considerable discretion" in determining response to communications indicating juror confusion).[7]

Accordingly, we identify no abuse of discretion in the district court's handling of the jury's request for Harper's testimony.

4.   Damages and Penalties

   a.   Damages

Saavedra maintains that the jury's $13,000 damage award should be offset by the more than $1.7 million the government has already recovered from settling codefendants.[8] The argument fails because "a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant" only when the settlement and judgment represent "common damages." Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989). As the district court correctly observed, the jury's damages award and prior settlement amounts are not "common damages" insofar as the jury's determination here reflected the extent to which only Saavedra's false claims or statements damaged the government. See D.A. 1033; see also P.A. 119 (instructing jury that "[y]ou are not judging the government's case against any other party"). Accordingly, Saavedra is not entitled to credit the government's recovery from other defendants against his individual FCA liability. See

---

[7] Defense counsel's offer to provide the jury with transcripts warrants no different conclusion. See, e.g., United States v. Escotto, 121 F.3d at 84 (recognizing "possibility of undue emphasis on transcripts sent in lieu of readbacks" and, thus, according district court same broad discretion in refusing transcript request).

[8] The district court ultimately ordered Saavedra to pay $39,000 in damages pursuant to 31 U.S.C. § 3729(a)(1), which provides for treble damages.

United States v. Bornstein, 423 U.S. at 312 (reasoning that FCA "penalizes a person for his own acts, not for the acts of someone else").

That the government originally sought to hold Saavedra liable for $540,409.97 in damages—the full amount of SEEDCO performance payments at issue—does not warrant a different conclusion. Where, as here, the defendant fraudulently caused payments to be made "for participating in programs designed to benefit third-parties rather than the government itself and the government received nothing of tangible value from the defendant . . . the government has entirely lost its opportunity to award the grant money to a recipient who would have used the money as the government intended." United States ex rel. Feldman v. van Gorp, 697 F.3d 78, 88 (2d Cir. 2012) (emphasis added). Under these circumstances, the government is entitled to damages "equal to the full amount of grants awarded to the defendants based on their false statements." Id. Because SEEDCO had been awarded a total of $5.4 million in 2011 alone, the government was entitled to recover at least that amount for the fraud caused by Saavedra and his codefendants between January and August of that year. Thus, even if the two amounts represent common damages, Saavedra cannot offset the $13,000 jury award against the government's more-than-$1.7 million recovery because the government has not yet been made "completely whole for the money taken from it by fraud." Id. at 87 (internal quotation marks omitted).

We, therefore, reject Saavedra's damages challenge as meritless.

b. Penalties

Saavedra faults the district court for (1) imposing civil penalties for each false statement the jury found and (2) applying the maximum $11,000 penalty per statement. See 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9). Neither challenge has merit.

Contrary to Saavedra's assertion, nothing in the statute requires the court to impose penalties based on the number of false claims under § 3729(a)(1)(A), instead of the number of false statements under § 3729(a)(1)(B).[9] Indeed, the Supreme Court has observed that the FCA "reaches beyond 'claims' which might legally be enforced, to all fraudulent attempts to cause the Government to pay out sums of money." United States v. Neifert-White Co., 390 U.S. 228, 233 (1968); see also United States ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 199 (D.C. Cir. 1995) ("Each individual false claim or statement triggers the statute's civil penalty." (emphasis added)). Accordingly, § 3729(a)(1)(B) imposes liability "for the commission of acts which cause false claims to be presented," United States v. Bornstein, 423 U.S. at 312 (emphasis added); accord United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1157 (2d Cir. 1993), regardless of the number of false claims that result, see United States v. Bornstein, 423 U.S. at 312 (holding subcontractor liable only for number of false shipments it made, and not for number of fraudulent invoices ultimately submitted by

---

[9] Because neither Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 787–88 (2000) (recognizing qui tam relator standing but holding that FCA liability does not extend to state entities), nor United States ex rel. Eisenstein v. City of New York, 540 F.3d 94, 95–96 (2d Cir. 2008) (discussing qui tam relator's deadline to file notice of appeal in FCA case where United States declined to intervene), aff'd, 556 U.S. 928 (2009), addressed this question, Saavedra's reliance thereon is misplaced.

13

contractor). The district court, therefore, correctly assessed civil penalties for each of the 13 false statements the jury found Saavedra personally to have made. Insofar as Saavedra asserted throughout this litigation that the quarterly SBS calculations—and not SEEDCO's false data entries—constituted the relevant FCA claims, this determination properly punished Saavedra "solely for [his] own wrongful acts" in causing these claims to be made. United States v. Zan Mach. Co., 803 F. Supp. 620, 625 (E.D.N.Y. 1992) (citing United States v. Bornstein, 423 U.S. 303).

The district court also acted within its discretion in imposing the maximum statutory penalty of $11,000 for each of Saavedra's false statements. See SEC v. DiBella, 587 F.3d 553, 572 & n.13 (2d Cir. 2009) (reflecting standard of review). Saavedra cannot urge otherwise by challenging the court's reliance on the press release issued by defense counsel following the jury's verdict. Saavedra's claim to have been "gratified" by a result reflecting "a very significant vindication" manifests a gross misunderstanding of the jury's verdict and a disturbing refusal to accept responsibility, D.A. 1030, both of which the district court properly took into account. See United States v. Saavedra, No. 11 Civ. 6425, 2015 WL 7621481, at *2 (S.D.N.Y. June 16, 2015) (citing BMY–Combat Sys. Div. of Harsco Corp. v. United States, 44 Fed. Cl. 141, 151 (1998)). While Saavedra challenges the court's failure to consider his "lifetime of work on behalf of the less fortunate," Appellant's Br. 57, the court was entitled to weigh this history against trial evidence demonstrating not only that Saavedra instructed his own assistant to falsify data, but also that he supervised two SEEDCO centers wherein data falsification was a routine and "deliberate method of doing business" from at least

August 2009 through October 2011, D.A. 1041—a far longer period than that which the jury considered in awarding damages.  See, e.g., SEC v. Rosenthal, 426 F. App'x 1, 2 (2d Cir. 2011) (approving district court's imposition of civil penalties after considering, inter alia, egregiousness of defendant's conduct, degree of defendant's scienter, and whether conduct was isolated or recurrent).

In this context, we identify no abuse of discretion in the district court's imposition of the maximum per-violation statutory penalty for each of Saavedra's false statements.

5.  Conclusion

We have considered Saavedra's remaining arguments and conclude that they are without merit.  Accordingly, the district court's judgment is AFFIRMED.

FOR THE COURT:<br>
CATHERINE O'HAGAN WOLFE, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit